UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:

|  |  |
|---|---|
|  | Chapter 11 |
| TG LIQUIDATING CO.[1] | Case No. 19-43260-tjt |
|  | Hon. Thomas J. Tucker |

      Debtor.

_____/

## **DEBTOR'S COMBINED PLAN OF**
## **LIQUIDATION AND DISCLOSURE STATEMENT**

**Prepared By:**

Maddin, Hauser, Roth & Heller, P.C.
David M. Eisenberg (P68678)
Julie Beth Teicher (P34300)
Counsel for Debtor
28400 Northwestern Hwy., Suite 200
Southfield, MI  48034
(248) 354-4030
deisenberg@maddinhauser.com

---

[1] TG Liquidating Co. was formerly known as The Tennis & Golf Company.

THE PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE DEBTOR'S PLAN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PLAN AND THE DISCLOSURE STATEMENT ARE NOT INTENDED TO BE AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN. NOR SHOULD THE INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT BE RELIED ON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.

*DEBTOR WILL REMOVE THE ABOVE STATEMENT AFTER APPROVAL OF THE DISCLOSURE STATEMENT AND BEFORE DISSEMINATION TO CREDITORS.*

DEBTOR EXPRESSLY RESERVES ITS RIGHT TO AMEND THIS PLAN AND THE DISCLOSURE STATEMENT.

# DEBTOR'S CHAPTER 11 PLAN

## ARTICLE I
## DEFINITIONS, RULES OF
## INTERPRETATION AND COMPUTATION OF TIME

1.1    **Scope of Definitions.**

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined have the meanings given them in section 1.2 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Disclosure Statement, the Bankruptcy Code, or the Bankruptcy Rules, will have the meaning given that term in the Disclosure Statement, the Bankruptcy Code, or the Bankruptcy Rules.

1.2    **Definitions.**

1.2.1   "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries, commissions for services rendered after the Petition Date, Professional Claims, all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, taxes accruing after the Petition Date, whether or not the last payment date is before or after the Confirmation Date, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c) of the Bankruptcy Code, provided, however, that this term does not include any portion of Allowed Secured Claims, whether or not all or part of any Allowed Secured Claim is entitled to priority under sections 503(b), 507, 363, or 364 of the Bankruptcy Code or otherwise.

1.2.2   "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 60 days after the Effective Date.

1.2.3 "**Affiliates**" has the meaning given it by section 101(2) of the Bankruptcy Code.

1.2.4 "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in the Class

1.2.5 "**Allowed Claim**" means a Claim or any portion of the Claim

a. that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate the Claim and objections to it);

b. as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that the Claim is identified in the Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

c. as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of the liquidated amount and (ii) no objection to its allowance has been Filed by Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

d. that is expressly Allowed in a liquidated amount in this Plan.

1.2.6 "**Allowed Class . . . Claim**" or "**Allowed Class ... Interest**" means an Allowed Claim or an Allowed Interest in the specified Class.

1.2.7 "**Allowed Interest**" means an ownership Interest in Debtor, which has been or is later listed by Debtor in its books and records as liquidated in an amount and not disputed or contingent; provided, however, that to the extent an Interest is a Disputed Interest, the determination of whether the Interest will be Allowed and/or the amount of any Interest will

be determined in the manner in which the Interest would have been determined if the Chapter 11 Case had not been commenced; and provided further, however, that proofs of Interest need not be Filed in the Bankruptcy Court with respect to any Interests; and provided further, however, that Debtor, in its discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

1.2.8 **"Asset Purchase Agreement"** means the asset purchase agreement entered into by the Debtor and the Purchaser which governed the Sale approved by the Bankruptcy Court.

1.2.9 "**Avoidance Claims**" means Causes of Action or defenses arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute the Causes of Action, including, but not limited to, any claims of any Affiliates and Insiders.

1.2.10 "**Ballot**" means each of the ballot forms that is distributed with the Disclosure Statement to Holders of Claims and Interests included in Classes that are Impaired under this Plan and entitled to vote under the terms of this Plan.

1.2.11 "**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. §§ 101, et. seq.), as in effect on the Petition Date or as may be amended (to the extent any such amendments are mad applicable to this Chapter 11 Case.

1.2.12 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District Michigan, or such other court that may have jurisdiction over the Chapter 11 Case.

1.2.13 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings in the Chapter 11 Case, and the Local Rules of the Bankruptcy Court.

1.2.14 "**Bar Date**" means the deadlines set, or to be set, by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Case.

1.2.15 "**Beneficiaries**" means all Creditors of the Debtor with Claims treated under Articles II or III of this Plan.

1.2.16 "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Detroit, Michigan.

1.2.17 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.18 "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by Debtor to the extent the Cause of Action is a Cause of Action held by Debtor, including, but not limited to, any claims against any Affiliates and Insiders.

1.2.19 "**Chapter 11 Case**" or "**Case**" means this chapter 11 case number 19-43260-tjt, currently pending in the United States Bankruptcy Court for the Eastern District of Michigan.

1.2.20 "**Claim**" means a claim against Debtor, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

1.2.21 "**Class**" means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.22 "**Client Trust Account**" means the Maddin, Hauser, Roth & Heller, P.C. client trust account.

1.2.23 "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.24 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.25 "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and related matters, as may be adjourned or continued from time to time.

1.2.26 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.27 "**Creditor**" means any creditor of Debtor as defined in section 101(10) of the Bankruptcy Code.

1.2.28 "**Debtor**" means TG Liquidating Co., f/k/a The Tennis & Golf Company and, after the Effective Date, the Reorganized Debtor.

1.2.29 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.30 "**Disclosure Statement**" means the written disclosure statement (including all attached and referenced schedules) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

1.2.31 "**Disputed Claim**" or "**Disputed Interest**" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest.

1.2.32 "**Effective Date**" means thirty (30) days after the Confirmation Date has occurred.

1.2.33 "**Entity**" has the meaning set forth at section 101(15) of the Bankruptcy Code.

1.2.34 "**Estate**" means the bankruptcy estate of Debtor created pursuant to section 541 of the Bankruptcy Code.

1.2.35 "**Exhibit**" means any exhibit or schedule attached to this Plan, the Disclosure Statement, or incorporated into either by reference, including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan and Disclosure Statement.

1.2.36 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case or such other court with jurisdiction over the relevant subject matter.

1.2.37 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.38 "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.2.39 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.2.40 "**General Unsecured Claim Payment**" means the payment, if Reorganized Debtor has sufficient funds, to be made to Holders of General Unsecured Claims as set forth in section 3.1.

1.2.41 "**Governmental Unit**" has the meaning set forth at section 101(27) of the Bankruptcy Code.

1.2.42 "**Holder**" means a Person holding a Claim, Interest, or Lien.

1.2.43 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.44 "**Insider**" has the meaning set forth at section 101(31) of the Bankruptcy Code.

1.2.45 "**Insider Claim**" means a Claim held by an Insider.

1.2.46 "**Interest**" means the legal, equitable, contractual, and other rights of any Person with respect to equity securities of, or ownership interests in Debtor.

1.2.47 "**IRC**" means the Internal Revenue Code of 1986, as amended.

1.2.48 "**IRS**" means the Internal Revenue Service.

1.2.49 "**Lien**" has the meaning set forth at section 101(37) of the Bankruptcy Code.

1.2.50 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.51 "**Petition Date**" means March 7, 2019, the date Debtor Filed its petition for relief in the Bankruptcy Court.

1.2.52 "**Plan**" means this plan for the resolution of outstanding Claims and Interests in the Chapter 11 Case, including all Exhibits, supplements, appendices, and schedules, either in its present form or as it may be altered, amended or modified in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.53 "**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

1.2.55 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.2.56 "**Proof of Claim**" means a proof of Claim Filed against Debtor in the Chapter 11 Case.

1.2.57 "**Pro Rata**" means (a) with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise and (b) with respect to Interests, at any time the proportion that the number of Interests held by an Interest Holder in a particular Class or Classes bears to the aggregate number of all Interests (including Disputed Interests, but excluding Disallowed Interests) in such Class or Classes.

1.2.58 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise.

1.2.59 "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and before and including the Effective Date.

1.2.60 "**Purchaser**" means Steven Kopitz, the successful purchaser at the Sale, and any of his successors and assigns.

1.2.61 "**Reorganized Debtor**" means Debtor from and after the Effective Date.

1.2.62 "**Retained Actions**" means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought before the Effective Date or identified in the Schedules or Disclosure Statement, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court before the date of this Plan.

1.2.63 "**Sale**" means the sale of substantially all Debtor's assets as approved by the Bankruptcy Court on April 23, 2019 [Docket No. 57].

1.2.64 "**Sale Proceeds**" means the proceeds received by the Debtor from the Sale in the amount of $266,853.74, currently held in the Client Trust Account.

1.2.64 "**Scheduled**" means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

1.2.65 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by Debtor.

1.2.66 "**Secured Claim**" means a Claim secured by a security interest in or a lien on property in which Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or as otherwise agreed upon in writing by Debtor and the Holder of such Claim.

1.2.67 "**Security**" has the meaning set forth at section 101(49) of the Bankruptcy Code.

1.2.68 "**Unimpaired**" means, with respect to a Claim, any Claim that is not Impaired.

1.2.69 "**Voting Deadline**" means the deadline set for the receipt of Ballots by Debtor or Debtor's agent as set by the Bankruptcy Court.

1.3 **Rules Of Interpretation:** For purposes of this Plan, unless otherwise provided herein:

1.3.1 Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural.

1.3.2 Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine and neuter.

1.3.3 Any reference in this Plan to an existing document or schedule Filed or to be Filed means the document or schedule, as it may have been or may be amended, modified or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, are incorporated by reference into this Plan and Disclosure Statement for all purposes.

1.3.4 Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns. Any reference to Debtor includes the Reorganized Debtor for all periods after the Effective Date.

1.3.5 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially on such terms and conditions.

1.3.6 The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

1.3.8 Subject to the provisions of any contract, certificates of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. To the extent that reference to state law is required, the Plan is governed by the substantive law of Michigan.

1.3.9 The rules of construction in section 102 of the Bankruptcy Code apply. The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous. However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4 **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 apply. Whenever any action is required to be performed or deadline expires on a specific date, if the date falls on a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006), the action may be performed, or the

deadline will expire, on the next day that is not a Saturday, Sunday or legal holiday.

      1.5    **References to Monetary Figures**.  All references in this Plan to monetary figures refer to currency of the United States of America.

      1.6    **Exhibits**.  All Exhibits are incorporated into and are a part of this Plan and Disclosure Statement as if set forth in full herein and, to the extent not attached to this Plan, the Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from Debtor's counsel. **All Exhibits may be revised before the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits.

      1.7    **No Admissions; Estimates of Claims**.  Unless expressly stated otherwise, nothing herein will be deemed to be an admission by Debtor or to otherwise prejudice Debtor in any Claim objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in this Plan, the Disclosure Statement, and Exhibits are current estimates only. All Claim amounts and classifications remain subject to the Claim objection process as set forth in Article XII.

**ARTICLE II**
**CLAIMANTS THAT ARE NOT SUBJECT TO CLASSIFICATION**
**AND ARE NOT ENTITLED TO VOTE ON THE PLAN:**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

2.1 **Administrative Claims.**

      Subject to the provisions of this Plan and upon occurrence of the Effective Date, as soon as possible after an Administrative Claim becomes an Allowed Administrative Claim or the date when an Administrative Claim becomes payable pursuant to any agreement between Debtor and the Holder of the Administrative Claim (but in no event later than ten days thereafter), a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and

discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim or such other treatment that Debtor and the Holder of the Allowed Administrative Claim shall have agreed upon in writing.

2.2 **Priority Tax Claims.**

2.2.1   The Holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of its Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, payment in cash of the outstanding amount of the Allowed Priority Tax Claim on the date that is 60 days after the Effective Date.  For the avoidance of doubt, all taxes of the type entitled to priority under 11 U.S.C. section 507(a) that have been assessed prior to the Petition Date are subject to this section 2.2.

2.2.2   Debtor reserves the right to continue or commence a challenge to any Priority Tax Claim through the claims objection process set forth in Article XII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims includes, without limitation, an objection to the assessment of Debtor's real or personal property that may or may not have been made by the respective taxing authority.

2.3 **Professional Claims.**

2.3.1   **Final Fee Applications.** All final requests for payment of Professional Claims must be Filed no later than thirty days after the Confirmation Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims and expenses will be determined by the Bankruptcy Court and paid by Debtor within three (3) Business Days after they are Allowed, unless otherwise agreed to in writing by Debtor and the Professional.

2.3.2   **Post-Confirmation Date Retention.** Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through

331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any disclosures pursuant to Bankruptcy Rules 2014 and 2016 will terminate, and Debtor shall employ and pay Professionals in the ordinary course of business.

2.4 **Substantial Contribution Compensation and Expenses Bar Date.** Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application with the clerk of the Bankruptcy Court on or before the Administrative Claims Filing Date and serve such application on counsel for Debtor and other parties as may be directed by the Bankruptcy Court on or before such date, or be forever barred from seeking such compensation or expense reimbursement. The Court will determine any timely filed request for compensation or expense reimbursement made under this section 2.4, and Debtor shall pay any Allowed amount within sixty days of entry of a Final Order.

2.5 **Other Administrative Claims**. All other requests for payment of an Administrative Claim (other than as set forth in section 2.4 of this Plan) must be Filed and served on Debtor's counsel by the Administrative Claims Filing Date, except that any Administrative Claim not already Filed and required to have been Filed before the Bar Date is automatically disallowed. Any request for payment of an Administrative Claim pursuant to this section 2.5 that is not timely Filed and served is automatically disallowed without the need for any objection by Debtor. After the Effective Date, Debtor may settle an Administrative Claim without further Bankruptcy Court approval. Unless Debtor objects to an Administrative Claim within 60 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), the Administrative Claim will be deemed Allowed in the amount requested. In the event that Debtor objects to an Administrative Claim, the Bankruptcy Court will determine the Allowed amount of the Administrative Claim.

**ARTICLE III**
**SPECIFICATION OF TREATMENT OF CLASSES**
**OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER**
**THE PLAN AND THOSE IMPAIRED UNDER THE PLAN**

The Plan divides Claims and Interests into two (2) Classes and treats them as follows:

3.1 **Class I:** This Class consists of all Allowed General Unsecured Claims. Holders of Class I Claims will be paid a Pro Rata share of the General Unsecured Claims Payment. The amount of the General Unsecured Claims Payment shall be the proceeds of all Debtor's assets, including all Causes of Action, after payment of all Administrative, and Priority Claims. Debtor makes no guaranty or representation that there will be sufficient funds to make a General Unsecured Claims Payment.

    3.1.1 **This Class is Impaired.**

3.2 **Class II**: This Class consists of the Claims of Interests. The Interests of this Class shall be deemed canceled.

    3.2.1 **This Class is Impaired.**

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1 **Termination of Operations and Post-Petition Governance of the Reorganized Debtor.** All of the Debtor's assets, with the exception of cash and accounts receivable, were sold to the Purchaser on April 29, 2019. The Sale Proceeds are being held in the Client Trust Account and all other cash and account receivables are being held in Debtor's checking account. Subsequent to the Sale, the Debtor ceased operations, but continued to collect outstanding receivables and proceeded to otherwise wind up its affairs. Upon the Effective Date, Debtor will become the Reorganized Debtor. Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall continue any activities necessary for winding up Debtor's affairs, and shall continue to collect all revenues and income, if any, and shall distribute such revenues and income, including the Sale Proceeds, as provided under the terms of this Plan. The Reorganized Debtor shall retain Rita Kozlowski as general manager. The Reorganized Debtor may retain other employees at commercially reasonable rates of compensation. The Reorganized Debtor shall continue to produce monthly operating reports in form and manner consistent with the Debtor's filing of such reports during the pendency of the Bankruptcy Case.

4.2. **Distribution of Proceeds.** The Confirmation Order shall serve as an order authorizing distribution of all proceeds in the manner set forth in this Plan. Upon the Effective Date, the Reorganized Debtor shall distribute the Sale Proceeds, as well as the cash currently held in the Debtor's checking account in accordance with this Plan. The only remaining assets of the Debtor are potential Causes of Action, which to the extent they are viable, the Reorganized Debtor shall

liquidate in a prompt and commercially reasonable manner. To the extent such Causes of Action yield any proceeds, the Reorganized Debtor shall make a second and final distribution of such proceeds in accordance with this Plan. The Reorganized Debtor may reserve, in its sole discretion, sufficient funds to satisfy reasonably anticipated administrative expenses. Subsequent to the Reorganized Debtor's initial distribution in accordance with this Plan, the Reorganized Debtor will file a distribution report with the Court. The Reorganized Debtor will prepare and file a final distribution report with the Court ten (10) days prior to making the final distribution under this Plan. The final distribution report will disclose the total amounts distributed or to be distributed under the Plan.

4.3 **<u>Assumption of Liability</u>**:

4.3.1 Debtor and Reorganized Debtor shall be responsible for satisfying the Allowed Claims in accordance with the terms and provisions of this Plan.

4.3.2 The Reorganized Debtor will retain control of and be responsible for all of Debtor's activities pursuant to this Plan after the Effective Date. Funding for the administration of the bankruptcy estate and of this Plan and for the actions necessary for the legal wind down of the Debtor shall come from funds on hand and the proceeds of the liquidation of Debtor's remaining assets.

4.3.3 The Reorganized Debtor may pre-pay any Allowed Claim, other than Allowed Claims held by Insiders or Affiliates, at any time without penalty or liability for unmatured interest. The Reorganized Debtor may negotiate discounts in exchange for pre-payments. Upon payment by the Reorganized Debtor to any Allowed Claim Holder in the amounts required under this Plan or as otherwise agreed by the Allowed Claim Holder, the Reorganized Debtor will have no further obligation to the Allowed Claim Holder under this Plan, and the Allowed Claim Holder will have no further or continued rights or standing under this Plan.

4.3.4 Upon full administration of all assets, distribution of all proceeds and satisfaction of all obligations under this Plan, the Reorganized Debtor will be dissolved. Nothing in this Section shall be construed as waiving or limiting the Reorganized Debtor's rights and interests under this Plan, to enforce those rights and interests through the Bankruptcy Court, to dispute claims, to bring motions or pursue Causes of Action in the Bankruptcy Court or any other court, or to petition the Bankruptcy Court for the redress of any grievances.

4.4    **Post-Confirmation Professionals:**

4.4.1    **Retention.** The Reorganized Debtor may retain professionals after the Effective Date to represent and assist the Reorganized Debtor in all aspects of its obligations and rights under this Plan. Without limitation, the Reorganized Debtor may retain professionals employed by the Debtor in the Chapter 11 Case.

4.4.2    **Professional Fees.** Any services performed or expenses incurred by any Professional on behalf of the Reorganized Debtor with respect to the Chapter 11 Case after the Confirmation Date, will be Administrative Claims, will be paid by Reorganized Debtor and will not be subject to the prior review and approval of the Bankruptcy Court, after twenty (20) days' notice to the Reorganized Debtor and Rita Kozlowski. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional will be required to disclose payments from the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Reorganized Debtor shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall review only that portion to which Reorganized Debtor or Rita Kozlowski objects. The Reorganized Debtor must pay the portion not objected to in accordance with the terms of the invoice.

4.5    **Effectuating Documents**: Rita Kozlowski, as general manager of the Reorganized Debtor, subject to the other terms of this Plan, shall be authorized as of the Effective Date to execute, deliver, file, or record such financing statements, contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate on behalf of the Reorganized Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Bankruptcy Court.

4.6    **Preservation of Rights of Action**:

4.6.1    **Vesting of Causes of Action:** In accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action of the Debtor and the Debtor's Estate will be transferred to the Reorganized Debtor. The Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence, pursue, compromise and collect, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date,

including, but not limited to, Avoidance Claims and any actions specifically listed in the Disclosure Statement.

4.6.2 **All Causes of Action are Specifically Reserved, whether or not specifically listed in the Plan or Disclosure Statement:** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, Exhibit, or a Final Order, the Debtor specifically reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppel (judicial, equitable or otherwise) or laches will apply to any of the Causes of Action upon, after or as a consequence of the Confirmation, entry of the Confirmation Order or the Effective Date.

## ARTICLE
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

5.1 **Settlement of Indebtedness**:  Except as otherwise provided in this Plan, the confirmation of this Plan will, and does hereby act as a full, total and complete settlement with respect to all Claims of all Creditors against the Debtor and the Reorganized Debtor. Confirmation will also act as an injunction against all Creditors from taking any actions to collect or enforce Claims against the Debtor or the Reorganized Debtor except as set forth in this Plan. The forgoing notwithstanding, the Debtor is not entitled to a discharge under 11 U.S.C. § 1141(d)(3) and this paragraph will not affect the rights of any taxing authority against any other entity or person who may be liable or responsible for the taxes of the Reorganized Debtor.

5.2 **Subordinated Claims**.  The allowance, classification and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and confirm the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, Debtor reserves the right to re-classify (or request that the Bankruptcy Court re-classify) any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto. If a Claim or Interest is Allowed but subordinated, the Claim or Interest will not be entitled to payment under this Plan until all other Claims have been paid in full or as otherwise specified by this Plan or the Bankruptcy Court.

5.3     **Injunction**.   Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold Claims or Interests that are treated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor and Reorganized Debtor or their property on account of any such discharged Claims, debts, liabilities, or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is not consistent, with the provisions of this Plan.

5.4     **Release of Liens**.   Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Articles II and III of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate will be deemed fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to Debtor and its successors and assigns.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTION

6.1     **No Interest On Unsecured Claims**.   Unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest will not accrue or be paid on any General Unsecured Claim.

6.2     **Delivery Of Distributions in General**.   Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests will be made by Reorganized Debtor (a) at the addresses set forth on the Proofs of Claim Filed by the Holders of Claims or Interests (or at the last known addresses of such Holders of Claims or Interests if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related Proof of Claim, or (c) at

the addresses reflected in the Schedules if no Proof of Claim has been Filed and Debtor has not received a written notice of a change of address. Distributions under the Plan on account of Allowed Claims will not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim will have and receive the benefit of the distributions in the manner set forth in the Plan.

6.3 **Undeliverable Distributions and Non-Negotiated Checks.** If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest will be made unless and until Debtor is notified of the then-current address of such Holder of the Claim, at which time all missed distributions will be made to the Holder of the Claim without interest. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty days after the issuance of the check, the check will be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks will be held by the Reorganized Debtor until the earlier of (i) when such distributions are claimed by the valid Holder of the Claim or (ii) ninety days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non- negotiated amounts will revert to the Reorganized Debtor free of any restrictions and the Claim of any Holder or successor to such Holder with respect to the distribution will be deemed discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein requires the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

6.4 **Fractional Payments.** Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars are not required. Payment of fractions of dollars that would otherwise be distributed under the Plan will be rounded to the lower whole number of dollars.

6.5 **Restrictions on Distributions.** Notwithstanding anything in this Plan to the contrary, Debtor is not required to make any distribution to a Claim Holder in an amount less than $10.00.

### ARTICLE VII
### MODIFICATION OF THE PLAN

7.1 **Modification of Plan**. Except as otherwise provided in this Plan, Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy

Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in the Plan, Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or materially modify the Plan, one or more times before the Confirmation Date. After the Confirmation Date, the Reorganized Debtor may, with leave of the Bankruptcy Court and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan

7.2 **Effect of Confirmation on Modifications**. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

7.3 **Revocation or Withdrawal of the Plan.** Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If Debtor revokes or withdraws the Plan, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (3) nothing contained in the Plan will: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Person.

**ARTICLE VIII**
**JURISDICTION OF THE COURT**

8.1 **Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction with respect to:

8.1.1 The classification of the Claim of any Creditor and the re-examination of Claims Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by Debtor to object to, or to examine any Claim for the purposes of voting, will not be deemed to be a waiver of any right to object to, or reexamine the Claim,

in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor will not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

      8.1.2   The determination of all questions and disputes regarding title to the assets of the estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between Debtor and any other party.

      8.1.3   The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

      8.1.4   The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

      8.1.5   The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

      8.1.6   The review and approval of all Professional Fee applications for services rendered before the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date to the extent that Debtor disputes all or a portion thereof.

      8.1.7   Debtor's right to pursue any Causes of Action or Avoidance Actions.

      8.1.8   The entry of an order determining the validity of any Lien.

      8.1.9   The entry of an order concluding and terminating this Case.

8.2    **<u>Standing.</u>**   Plan Beneficiaries have standing to enforce their rights under this Plan or to seek relief in the event that any person or entity fails to comply with their obligations under this Plan.

## ARTICLE IX
## TITLE TO PROPERTY

9.1.    **Revesting of Assets**.  Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property held by the Estate (including all Causes of Action) will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of Creditors and equity security Holders. As of and following the Effective Date, the Reorganized Debtor, as provided for under the terms of this Plan, may conduct the Debtor's activities and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

9.2.    **Effect of Conversion**. In the event of a conversion of this case to a Chapter 7 proceeding, all property of the Debtor or Reorganized Debtor, including property which will revest in the Reorganized Debtor pursuant to Confirmation of this Plan and all property acquired by the Reorganized Debtor subsequent to Confirmation, shall be property of the Chapter 7 estate, subject to the Liens and security interests granted under this Plan.

## ARTICLE X
## UNITED STATES TRUSTEE FEES & REGULATORY COMPLIANCE

10.1    **Payment of U.S. Trustee Fees**.  Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) and shall provide the United States Trustee with appropriate reports indicating the cash disbursements for the relevant period until such time as the Chapter 11 Case is administratively closed.

## ARTICLE XI
## EXECUTORY CONTRACTS

11.1    **Rejection of Executory Contracts and Unexpired Leases.**  Unless rejected under this Plan or subject to a separate motion to assume or reject filed before the Confirmation Date, all executory contracts and unexpired leases of Debtor shall be deemed rejected. With respect to leases of real or personal property, the rejection shall be deemed to occur at the earlier of (i) the Effective Date or (ii) the date the Debtor surrendered possession of the premises or the personal property that is the subject of the lease.

11.2    **Rejection Claims.**  Any Creditor who has a Claim as a result of the rejection of a contract shall have until thirty days after the Effective Date to file a

Proof of Claim asserting the rejection damages relating to the contract, failing which such Claim will be disallowed in its entirety. Creditors whose contracts are assumed or rejected under a Court Order entered before the Effective Date are required to follow the procedures set forth in the Court Order if they differ from the procedures set forth above.

11.3 **Objections to Rejection Claims and Cure Claims.** The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article XII.

**ARTICLE XII**
**OBJECTIONS TO CLAIMS**

12.1. **Timing of Objections:** The Reorganized Debtor may object to the allowance of any Claim, whether listed on the Schedules filed by Debtor, or filed by any Creditor, on or before the later of (a) three months from the date of filing of any Proof of Claim or (b) three months after the Effective Date.

12.2 **Objections to Liens: The** Reorganized Debtor may object to any Lien or security interest within the time period set forth in Section 12.1 or after any attempt by a Creditor to enforce the Lien, except that Debtor may not file an objection to any Lien that is the basis of a Claim Allowed under the terms of this Plan.

12.3 **Claims Bar Date**: Except as provided herein or otherwise agreed by Debtor in writing, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date (or, for a Claims Bar Date after the Effective Date, as of the applicable Claims Bar Date) without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been held timely Filed by a Final Order. It is the responsibility of the Creditor holding any such late Claim to request that such late claim be held timely Filed.

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

13.1 **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject

the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

13.2 **Additional Documents**. On or before the Effective Date, Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3 **Reservation of Rights**. Except as expressly set forth in the Plan, the Plan will have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Debtor with respect to the Plan or the Disclosure Statement shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Interests before the Effective Date.

13.4 **Successors and Assigns**. The rights, benefits and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person. This provision does not apply to the Purchaser.

13.5 **Service of Documents.** After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or the Reorganized Debtor must be sent by overnight mail, postage prepaid to:

TG Liquidating Co.
c/o Rita Kozlowski
29488 Woodward Ave., #341
Royal Oak, MI 48073-0903

*with a copy to:*

David M. Eisenberg
**Maddin, Hauser, Roth & Heller, P.C.**
28400 Northwestern Highway, Second Floor
Southfield, MI 48034

13.6   **Entire Agreement.** Except as otherwise stated in this Plan, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.7   **Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor's consent; and (3) nonseverable and mutually dependent.

13.8   **Closing of Chapter 11 Case**.   Debtor shall, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court, all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

13.9   **Waiver or Estoppel**. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with Debtor, its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

13.10   **Conflicts and Interpretation of the Plan**. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any other

03111702 v1

order (other than the Confirmation Order) referenced in the Plan or any Exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, conflict with or are in any way inconsistent with any provision of the Plan, the Plan will govern and control.

13.11 **Termination of Liens and Encumbrances**. Debtor and all parties-in-interest, including any Creditor, must execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This includes the execution by Creditors of any Uniform Commercial Code termination.

13.12 **Causes of Action; Standing**. Except as otherwise provided in this Plan, Reorganized Debtor has the right and authority to commence, continue, amend or compromise all Causes of Action available to Reorganized Debtor, the Estate or the debtor-in-possession, including without limitation all Avoidance Claims whether or not those Causes of Action or Avoidance Claims were the subject of a suit as of the Confirmation Date.

# DISCLOSURE STATEMENT

## I.    <u>Introduction and Overview</u>.

    A.    *Purpose of Disclosure Statement.*

All capitalized terms, unless the term is defined in this Disclosure Statement, have the meaning given in the Debtor's Plan of Reorganization (the "<u>Plan</u>").

The Debtor submits this Disclosure Statement ("<u>Disclosure Statement</u>") pursuant to § 1125 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., to all known Holders of a Claim against it. The Debtor has filed the Plan with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, a copy of which accompanies this Disclosure Statement.

The Debtor provides this Disclosure Statement to its Creditors to disclose information material and necessary for Creditors to make a reasonably informed decision in exercising their right to vote to accept of the Plan.

    B.    *Source of Information.*

The Disclosure Statement and the Plan have been prepared from information furnished primarily by Debtor. Debtor's counsel has not conducted an independent investigation to verify this information.

Certain materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are summaries of other documents. While every effort has been made to retain the meaning of these documents or portions of documents that have been summarized, Debtor urges you to thoroughly review the contents of these documents before relying on them. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of the document will govern.

The statements contained in this Disclosure Statement are made as of its date, unless another time is specified. Neither the delivery of this Disclosure Statement nor any exchange of rights in connection with it will, under any circumstances, create an implication that there has been no change of the facts set forth in this Disclosure Statement since the date it was first filed.

**NO PERSON OR ENTITY HAS BEEN AUTHORIZED BY DEBTOR OR THE COURT TO GIVE ANY INSTRUCTIONS OR MAKE ANY REPRESENTATIONS CONCERNING DEBTOR, DEBTOR'S FINANCIAL AFFAIRS, OR THE VALUE OF ITS PROPERTY, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE PLAN. ANY REPRESENTATIONS, PROMISES OR INDUCEMENTS, PARTICULARLY REGARDING DEBTOR'S PROPERTY OR FUTURE INCOME, MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN, WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. ANY SUCH REPRESENTATION, INDUCEMENTS AND/OR PROMISES SHOULD BE REPORTED TO COUNSEL FOR DEBTOR WHO, IN TURN, SHALL INFORM THE COURT.**

C.      *Overview of Chapter 11.*

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors, and equity interest holders. In addition to permitting a rehabilitation of a debtor, another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets. The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that a debtor may continue to operate its business and remain in possession of its property as a debtor-in-possession.

The consummation of a plan of reorganization or liquidation (either a "plan") is the principal objective in a Chapter 11 case.  A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the Bankruptcy Court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor or equity interest holder of a debtor. Subject to limited exceptions, the confirmation order discharges a debtor from any debt that arose before the date of confirmation of the plan and substitutes the obligations specified under the confirmed plan.

After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, § 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate

information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. Debtor is submitting this Disclosure Statement to Holders of Claims against, and equity Interests in, Debtor to satisfy the requirements of § 1125 of the Bankruptcy Code.

## II.    Exhibits to this Disclosure Statement.

The following Exhibits are incorporated into and are a part of this Plan and Disclosure Statement as set forth in Section 1.6 of the Plan.

A.    Liquidation Analysis

B.    Financial Information for Three Years Before the Petition Date

C.    Summary of Monthly Operating Reports Filed in this Chapter 11 Case

## III.    Description of the Debtor

A.    The Debtor is a Michigan corporation that was a retailer of sporting goods. The Debtor was formed in 1977 and incorporated in 1986. The Debtor operated a single retail location in Royal Oak, Michigan that sold primarily tennis, golf, running, and fitness related equipment and apparel to retail customers as well as team uniforms and related equipment to certain public and private schools and institutions. At any one time, the Debtor employed approximately 30 to 40 full and part-time employees until the Debtor sold substantially all of its assets in the Sale authorized under 11 U.S.C. § 363 [See Docket No. 57]. Under the Plan, the Debtor is liquidating its remaining assets and will wind-down its operations.

B.    *Description of the principals.*

1.    Background:

a.    David Schwartz was the Director of the Debtor. He formed the Debtor in 1977. Mr. Schwartz has Lewy Body Dementia, among other health issues, and he operated the Debtor until his illness no longer allowed him to do so. He is currently in a nursing facility and has not had the capacity to sufficiently oversee the Debtor's business for the last couple of years, and has not participated at all in this Chapter 11 Case. Under a General Durable Power of Attorney, Mr. Schwartz's wife, Joan Schwartz, has acted on Mr. Schwartz's behalf in, and has executed all documents required for, this Chapter

11 Case. Mr. Schwartz's trust, the Revocable Living Trust of David A. Schwartz u/a/d February 18, 1994, as amended, owns a 90% interest in the Debtor. Prior to forming the Debtor, Mr. Schwartz, owned and operated a jewelry store a few years.

b. Rita Kozlowski is the general manager of the Debtor. Ms. Kozlowski has acted as the general manager of the Debtor for over thirty-six years. Under the *Unanimous Joint Written Consent of the Sole Director and All of the Shareholders of the Tennis & Golf Company* [Docket No. 5], Ms. Kozlowski was authorized and empowered to execute and file the Debtor's voluntary bankruptcy petition with the Bankruptcy Court, and is authorized and empowered to take any action to execute, acknowledge, deliver and file all documents and instruments that Ms. Kozlowski, in her discretion, deems necessary or proper with respect to the Debtor, the voluntary bankruptcy petition, and this Chapter 11 Case. Ms. Kozlowski's trust, the Kozlowski Joint Trust dated October 7, 2014, owns a 10% interest in the Debtor. Prior to starting work for the Debtor, Ms. Kozlowski worked as an assistant to the buyer for Acme Sporting Goods.

2. *Compensation:*

a. Up through December 2018 Mr. Schwartz took shareholder distributions in the form of direct payments for vehicle lease payments, property taxes for residence, personal tax estimates, certain medical expenses, insurance premiums, and other miscellaneous personal expenses. In the year prior to the Petition Date, such distributions totaled approximately $66,000.00. Prior to Mr. Schwartz's illness, when he still performed work for the Debtor, he was paid an annual salary of approximately $60,000.00.

b. Up until the Sale, Ms. Kozlowski was paid an annual salary of $110,000.00, and up until the Petition Date, Ms. Kozlowski took shareholder distributions in the form of direct payments for life insurance. After the Sale Ms. Kozlowski ceased earning her salary, but has continued to provide services to the Debtor. The Reorganized Debtor will compensate Ms. Kozlowski at the rate of $50.00 per hour for services performed, which is approximately the same as Ms. Kozlowski's pre-petition compensation converted to an hourly amount.

3.     Legal Relationship with the Debtor:

a.     Mr. and Mrs. Schwartz assert a claim against the Debtor for pre-petition amounts loaned to the Debtor in the amounts totaling $268,344.37.

b.     Rita Kozlowski asserts a claim against the Debtor for pre-petition amounts loaned to the Debtor in the amount of $46,782.00.

C.     *The Debtor's business and the causes for the Chapter 11 filing.*

The Debtor was founded in 1977, and was incorporated in 1986 as the Tennis Company. It originally offered same day tennis racquet re-stringing and quality tennis products. The Debtor first operated out of a 750 square foot store in Oak Park, Michigan. Over time, the Debtor developed a very loyal following in the local tennis community and business increased. In 1999, the Debtor expanded its operations to offer additional products and moved to its last location on Woodward Avenue in Royal Oak, Michigan, and at the same time changed its name to the Tennis and Golf Company. The Debtor's store was over 19,000 square feet and offered additional products, including golf, running, and fitness equipment and apparel.

The Debtor's loyal customer base only grew throughout the years and eventually the Debtor developed into one of the largest independent specialty retailers in the country. In addition to offering name brand equipment and apparel for sale, the Debtor offered one-hour racquet stringing, a "try before you buy" tennis half-court hitting lane, as well demo areas for customers to test golf equipment. Up through the Petition Date, the Debtor enjoyed a stellar reputation for providing high quality service and products, and its core customer group remained extremely loyal.

Unfortunately, the Debtor's loyal customer base and reputation were not enough to insulate it against the realities facing independently owned brick and mortar retail stores, and the downturn that the Debtor experienced in the last number of years is by no means unique. The Debtor's financial issues generally began during this country's "Great Recession" in 2008-2009 with reduced consumer spending. However, the end of the Great Recession coincided with the rapid growth of online retailers. The ability of consumers to purchase sporting goods online from the likes of Amazon.com, eBay.com, as well as online sporting

goods retailers that specialize in tennis and golf equipment and apparel drastically cut into the Debtor's revenues. The convenience of online shopping, as well as these online retailer's ability to offer free shipping and a lack of sales tax (though the latter is changing) proved attractive to many existing and potential customers.

In addition, many of the manufacturers whose products the Debtor sold began themselves now selling directly to consumers over the internet, providing yet another efficient and cost-effective option to consumers. Compounding this problem, manufacturers used to partner with independent retailers, including the Debtor, with respect to advertising, sometimes contributing up to 50% of the retailer's advertising cost. Manufacturers also used to offer "close out" sales directly to independent retailers, providing them with an opportunity to purchase, at deeply discounted prices, inventory that had not sold during the current season. Direct competition between manufactures and independent retailers ended, or significantly reduced, the "closeout" sale.

Over the years, the Debtor saw its annual revenue decline by over $1 million, with no change to overhead. In an attempt to cut costs and continue to service its customers, the Debtor reduced its workforce and reduced its purchase of new inventory. Unfortunately, the Debtor determined that despite these efforts, the Debtor could not continue operations for any significant period of time outside the protections of chapter 11 bankruptcy.

## IV. Post-petition events of significance

A. *Post-petition transfers outside of the ordinary course of business.*

There have been no post-petition transfers outside of the ordinary course of business during this case, except as authorized by the Bankruptcy Court.

On April 11, 2019, the Debtor filed a motion requesting that the Court authorize the Sale of substantially all of the Debtor's assets, with the exception of cash, accounts receivable, Causes of Action, a single desktop computer and peripheral devices, and certain personal items [Docket No. 47]. The Bankruptcy Court entered an order approving the Sale [Docket No. 57] on April 23, 2019.

The Sale closed on April 29, 2019. As a result of the closing of the Sale, the Debtor received $266,853.74 in Sale Proceeds which were deposited in the Client Trust Account.

B.    *Summaries of important details of cash collateral, post-petition financing and adequate protection.*

As of the Petition Date, the Debtor did not have any secured creditors. Because the Sale closed less than two months after the Petition Date, there was no need for the Debtor to obtain post-petition financing.

C.    *Explain any litigation in the case.*

As of the filing of the Plan and this Disclosure Statement, no litigation has occurred in this Chapter 11 Case.

V.    **Assets and Liabilities.**

A.    Debtor's liquidation analyses is attached as **Exhibit A**.

B.    *Risks, conditions and assumptions regarding the stated values.*

i.    All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to Debtor. The estimates have not been audited. Other than cash, all valuations are necessarily estimates and actual results may result in higher or lower recoveries.

ii.    Unless otherwise noted, Debtor has used the liabilities set forth in the Proofs of Claims and Schedules. These amounts are subject to adjustment and objections by Debtor.

iii.    Costs of liquidation are estimates.

C.    *Identify all potential claims and causes of action, including claims against insiders and avoidance actions.*

The Debtor is not aware of any Causes of Action not otherwise set forth herein. Furthermore, the Debtor has not undertaken an analysis of what claims it may have under Chapter 5 of the Bankruptcy Code and the potential defenses thereto, and cannot make any representations as to their value.

However, the Debtor has filed detailed schedules and a statement of financial affairs that disclose the Debtor's relevant pre-petition transfers.

The Debtor reserves the right to collect all accounts receivable and all other amounts due Debtor for any reason whatsoever (whether owed to Debtor pursuant to contract rights, quasi contract, tort law, refund rights, deposits, or for any other reason). The Debtor reserves all setoff and recoupment rights of all kinds. The Debtor reserves the right to commence avoidance actions pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549 and 550 (the "Avoidance Claims"). Accordingly, the Debtor may have potential causes of action and reserves its right to bring a lawsuit against any entity listed on Debtor's Schedules (as filed with the Bankruptcy Court) as owing a debt to the Debtor, and any entity listed on their Statement of Financial Affairs (as filed with the Bankruptcy Court) as having received a transfer from the Debtor. More specifically, and without waiving any other claim, the Debtor may seek to avoid from any direct or indirect transferee, (i) under § 547 of the Code, any transfer of an interest of the Debtor in property which occurred within 90 days of the Petition Date, or, for insiders of the Debtor, within one year of the Petition Date; (ii) under § 544(a) and 545, any liens asserted against the Debtor, (iii) under §§ 544(b) and 548, any actual or constructive fraudulent transfers or obligations, and (iv) under § 549, any unauthorized post-petition transactions.

In addition, the Debtor reserves the right to collect and pursue all Causes of Action arising before or after the Petition Date in the ordinary course against any and all Persons with which the Debtor has contractual, trade or account relations, including all Causes of Action relating to breaches of contract, collection of accounts receivable and other actions against the Debtor's clientele that may owe money or other obligations to the Debtor, breach of warranties or representations, supply of non-conforming or deficient goods or services, overpayments, credits, setoffs, demands for turnover of property, and any other Causes of Action that the Debtor may have arising under applicable state or federal law against the Debtor's customers, trade suppliers and other business partners of any nature whatsoever.

Under the Plan, the Reorganized Debtor retains discretion to litigate, settle or abandon any Causes of Action, including Avoidance Claims.

D.    *Priority claims and anticipated administrative claims.*

The Claims listed herein are for description purposes only and not an admission by the Debtor or any other person. The Debtor reserves the right to contest the amount of any Claim, or the priority or extent thereof.

While it is impossible to accurately estimate administrative expenses as of the date of this Disclosure Statement, as such estimate depends on various unknown factors, including the total duration of the Chapter 11 Case and the nature and extent of additional administrative expenses, including professional expenses. The Debtor's Schedules list a total of $5,620.88 in priority wage claims pursuant to 11 U.S.C. §507(a)(4). All of those claims were paid pursuant to the Bankruptcy Court's *First Day Order Authorizing Debtor to Pay Certain Pre-Petition (i) Wages, Salaries, and Other Compensation, (ii) Employee Medical and Similar Benefits, (iii) Reimbursable Employee Expenses and (iv) Workers' Compensation Benefits* [Docket No. 29]. As of the date of this Disclosure Statement, the Debtor is not aware of any other Priority Claims. The Debtor reserves the right to contest the amount and priority of any other Priority Claim filed in this Chapter 11 Case and nothing in the Plan or Disclosure Statement shall be deemed an admission by the Debtor.

The Debtor anticipates the following Administrative Claims:

| Claimant | Estimated Amount | Priority/Administrative |
|---|---|---|
| Maddin, Hauser, Roth & Heller, P.C. | $90,000.00 | Administrative |
| Rita Kozlowski | $5,000.00 | Administrative |
| T&S Associates, P.C. | $2,500.00 | Administrative |
| United States Trustee | $7,000.00 | Administrative |

E.     *Total of all non-priority unsecured claims, including undersecured claims.*

The Claims listed herein are for description purposes only and not an admission by the Debtor or any other person. The Debtor reserves the right to contest the amount of any Secured Claim or Unsecured Claim, and if applicable, any asserted security interest or Lien, or the priority or extent thereof.

The total estimated amount of the non-Priority Unsecured Claims, as reported on the Debtor's Schedules is $1,339,166.29. Further information on Claims can be found by accessing the claims register on the Bankruptcy Court's website. The Debtor reserves the right to contest the amount and priority of the Non-Priority Unsecured Claims for any reason and nothing in the Plan or Disclosure Statement shall be deemed an admission by the Debtor.

F.    *Information regarding guaranteed debt or persons co-liable with Debtor on any debt.*

The Claims listed herein are for description purposes only and not an admission by the Debtor or any other person.  The Debtor reserves the right to contest the amount of any Claim, and if applicable, any asserted security interest or Lien, or the priority or extent thereof.

| Guarantor/Co-Debtor | Creditor | Nature of Debt | Amount | Collateral |
|---|---|---|---|---|
| David Schwartz | Acushnet | Guaranty for purchased inventory | $24,932.03 | N/A |
| David Schwartz | American Express | Co-debtor for credit card debt | $114,833.19 | N/A |
| David Schwartz | Amer Sports | Personal guaranty for purchased inventory | $104,872.16 | N/A |
| David Schwartz | US Bank Visa | Co-debtor for credit card debt | $75,783.13 | N/A |
| David Schwartz | Chase Visa | Co-debtor for credit card debt | $48,289.78 | N/A |
| David Schwartz | Adidas | Personal guaranty for purchased inventory | $39,311.56 | N/A |
| David Schwartz | Babolat | Personal guaranty for purchased inventory | $31,524.15 | N/A |
| David Schwartz | TNF The North Face VF Corp. | Personal guaranty for purchased inventory | $29,145.67 | N/A |
| David Schwartz | Smartwool VF Corp | Personal guaranty for purchased inventory | $25,158.98 | N/A |
| David Schwartz | Polo | Personal guaranty for purchased inventory | $17,836.15 | N/A |
| David Schwartz | J Lindenberg | Personal guaranty for purchased inventory | $16,448.21 | N/A |
| David Schwartz | Prana | Personal guaranty | $14,266.39 | N/A |

| | | for purchased inventory | | |
|---|---|---|---|---|
| David Schwartz | Fila | Personal guaranty for purchased inventory | $14,820.95 | N/A |
| David Schwartz | Marmot | Personal guaranty for purchased inventory | $9,926.33 | N/A |
| David Schwartz | Lija (Hyp) | Personal guaranty for purchased inventory | $6,808.86 | N/A |
| David Schwartz | Travis Matthew | Personal guaranty for purchased inventory | $5,679.80 | N/A |
| David Schwartz | Bushnell | Personal guaranty for purchased inventory | $4,926.97 | N/A |
| David Schwartz | Ice Breaker | Personal guaranty for purchased inventory | $4,824.40 | N/A |
| David Schwartz | Callaway | Personal guaranty for purchased inventory | $4,265.67 | N/A |
| David Schwartz | Taylormade | Personal guaranty for purchased inventory | $2,644.96 | N/A |
| David Schwartz | Luxottica | Personal guaranty for purchased inventory | $3,734.96 | N/A |

## VI.     **Details Regarding Implementation of the Plan**

A.     *Summaries of Financial Information*

1.     Three Years prior the Petition Date:  The Debtor has attached as **Exhibit B**, financial summaries relating to the three fiscal years prior to the Petition Date (2016, 2017, and 2018).   These documents summarize the

Debtor's financial history prior to the commencement of the Debtor's bankruptcy proceeding.

       2.      Post-Petition Financial Summaries: The Debtor has attached as **Exhibit C**, summaries of its monthly operating reports filed in this Chapter 11 Case. The full monthly operating reports are available on the Court's docket or can be obtained upon request to the Debtor's counsel.

B.    *Persons in Charge of the Reorganized Debtor and Compensation*

       1.      After the Effective Date of the Plan, subject in all respects to the terms of the Plan, including but not limited to section 4.1.1 of the Plan, Rita Kozlowski will continue as general manager, with compensation set at $50.00 per hour for actual services rendered.

C.    *Tax Ramifications if the Plan is Confirmed.*

       1.      To the Debtor

    The Debtor believes that the forgiveness of indebtedness will not result in a significant tax consequence to the Debtor. The forgiveness of indebtedness, pursuant to the Internal Revenue Code, can be applied either to the Debtor's basis in its assets or to its net operating loss carry forward. The Debtor cannot accurately determine the amount and extent of any forgiveness of indebtedness. First, the Debtor must determine if all of the Claims that have been filed, or deemed filed within this Case, are accurate. Also, depending on whether the Debtor achieves or exceeds the projection in its current fiscal year, the Debtor may elect to apply any forgiveness of a debt directly to its basis. Despite the fact that the Debtor believes that it can either (a) apply such forgiveness of indebtedness to its net operating loss carry forward or (b) to its basis, it is not expected that the amount of forgiveness of debt will be totally offset by the foregoing. However, once these net operating losses are used by the Debtor to offset forgiveness of indebtedness, they cannot be used again. Taxes paid by the Debtor in the future years would, therefore, be impacted as a result of confirmation of the Plan.

### 2. To Creditors

The tax consequences to each Creditor resulting from confirmation of the Plan may vary depending upon each Creditor's particular circumstances. Debtor recommends that Creditors or Holders of Claims and Interests obtain independent tax counsel to advise them as to the tax consequences of the Plan.

## VII. **Legal requirements, as follows**:

### A. *Voting procedures*

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests, that are impaired under the plan. Accordingly, classes of Claims or Interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a Creditor will receive a separate ballot for all of its Claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each Ballot separately. A Creditor who asserts a Claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan will be counted only with respect to Claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities <u>other</u> than as disputed, contingent or unliquidated; or (b) for which a Proof of Claim was filed on or before the bar date set by the Court for the filing of Proofs of Claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a Holder of a Claim will not be counted if such Claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the plan by each Holder of a Claim or Interest in an impaired class is important. After carefully reviewing the Plan and Disclosure Statement, each Holder of such a Claim or Interest should vote on the enclosed ballot either to accept or to reject the Plan, and then return the ballot by mail to the Debtor's attorney by the deadline previously established by the Court.

03111702 v1

13

Any ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

B.      *Acceptance*

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C.      *Confirmation*

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:
1.      Each class of impaired creditors and interests must accept the plan, as described in paragraph VII.B., above.
2.      Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

D.      *Modification*

The Debtor reserves the right to modify or withdraw the Plan at any time before Confirmation.

E.      *Effect of confirmation*

If the Plan is confirmed by the Court:

1.  Its terms are binding on the Debtor, all Creditors, shareholders and other parties in interest, regardless of whether they have accepted the Plan.

2.  Except as provided in the Plan and in 11 U.S.C. § 1141(d):

    (a)  In the case of a <u>corporation</u> that is reorganizing and continuing business:

        (1)  All claims and interests will be discharged.

        (2)  Creditors and shareholders will be prohibited from asserting their claims against or interests in the debtor or its assets.

    (b)  In the case of a <u>corporation</u> that is liquidating and not continuing its business:

        (1)  Claims and interests will not be discharged.

        (2)  Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

    (c)  In the case of an individual or husband and wife:

        (1)  Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 1141(d). Unless the Court orders otherwise, the discharge will be entered only after completion of plan payments as provided in § 1141(d)(5)(a). It is the usual practice of the Court to close Chapter 11 cases after confirmation, then the individual debtor files a motion to reopen the case for entry of discharge upon completion of plan payments.

        (2)  Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 1141(d).

Paragraph VII.E.2.(b) applies in this case.

Submitted by:                          Prepared by:

TG Liquidating Co.,                    Maddin, Hauser, Roth & Heller, P.C.
Debtor


/s/ Rita C. Koslowski                  By: /s/ David M. Eisenberg
By: RITA C. Kozlowski                  David M. Eisenberg (P68678)
Its:  General Manager, Debtor          Julie Beth Teicher (P34300)
                                       28400 Northwestern Hwy., Suite 200
                                       Southfield, MI  48034
                                       (248) 354-4030
                                       deisenberg@maddinhauser.com


DATED:  June 24, 2019

03111702 v1